UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **BRANDON M OWEN** | **CIVIL ACTION NO. 23-506** |
| **VERSUS** | **JUDGE EDWARDS** |
| **STEVE PRATOR ET AL** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING & ORDER

Before the Court is a Motion to Dismiss (R. Doc. 6) filed by Deputy M. Guerrero ("Deputy Guerrero"), Deputy M. Rocco ("Deputy Rocco"), Deputy E. Parker ("Deputy Parker"), Deputy R. Sikes ("Deputy Sikes"), Deputy M. Gray, in their individual and official capacities, and Sheriff Steve Prator, in his capacity as Caddo Parish Sheriff (collectively, "Defendants").[1] Defendants seek to dismiss certain claims brought by Brandon Mark Owen ("Plaintiff") – namely, all claims brought on behalf of Plaintiff's minor son ("B.O.") and the federal *Monell* claim against Sheriff Steve Prator ("Sheriff Prator").[2] Plaintiff opposes the motion.[3] Defendants filed a reply memorandum in response to Plaintiff's opposition.[4] Having considered the foregoing, Defendants' Motion (R. Doc. 6) is **GRANTED**.

## BACKGROUND[5]

In the early morning hours of April 19, 2022, Plaintiff and B.O. were asleep in their home when a neighbor called the Caddo Parish Sheriff's Department claiming

---

[1] R. Doc. 6. Deputy M. Gray is named as a defendant; however, the Complaint does not include any facts explaining his role in the incident.
[2] R. Doc. 6 at 1; *see generally*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 658 (1978).
[3] R. Doc. 8.
[4] R. Doc. 9.
[5] For the purposes of this motion, the Court will accept all facts pled by the Plaintiff as true.

she heard someone inside the Plaintiff's residence yell to call the police.[6] Deputies were dispatched to the area in response to the domestic-disturbance call from Plaintiff's neighbor.[7] When the deputies arrived there was no ongoing disturbance at the Plaintiff's residence.[8] After speaking to the neighbor, who informed them that there were three children living in the home, deputies decided to forcibly enter the residence without a warrant, citing exigent circumstances.[9]

All of the deputies agreed to forcibly enter the home. Deputy Spikes planned the forced entry, Deputy Guerrero "bashed in the front door," and Deputy Parker "immediately discharged his rifle into the home and killed the dog, which was not attacking, but standing and barking."[10] One of the shots fired at the dog was "taken in direct line of" B.O.'s bedroom where he was standing.[11] As Plaintiff held his hands up and asked why they shot his dog, Deputy Rocco shot Plaintiff with a "less lethal instrument."[12]

## **LEGAL STANDARD**

A pleading must contain a "short and plain statement of the claim showing the pleader is entitled to relief."[13] A claim will survive a motion to dismiss if the complaint contains sufficient facts "to state a claim to relief that is plausible on its face."[14] As stated in *Twombly*, "factual allegations must be enough to raise a right to relief above

---

[6] R. Doc. 1 at 4; *see also* R. Doc. 6-1 at 6.
[7] *Id*.
[8] *Id*. Plaintiff also contends that deputies had no credible information that there had been a domestic disturbance.
[9] *Id*.
[10] *Id*. at 5.
[11] *Id*.
[12] *Id*.
[13] FED. R. CIV. P. 8(a)(2).
[14] *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

the speculative level."[15] The relevant inquiry is not whether the plaintiff will succeed at trial, but rather, accepting the allegations of the complaint as true, whether plaintiff has pled a legally cognizable claim.[16] However, courts are not required to accept legal conclusions as facts.[17] Similarly, a complaint does not state a plausible claim for relief if it only sets forth a "formulaic recitation of the elements of a cause of action."[18] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[19]

## ANALYSIS

In this Motion, Defendants argue that (1) the federal claims on behalf of B.O. are not cognizable under 42 U.S.C. § 1983; (2) that the state claims on behalf of B.O. should be dismissed because they fail as a matter of law and are duplicative of Plaintiff's claims; and (3) Plaintiff's *Monell* claims against Sheriff Prator are not adequately pled. The Court addresses each of these arguments in turn.

### 1. Federal Claims on behalf of B.O.

Plaintiff alleges that Defendants' actions violated B.O.'s Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.[20] To state a claim under § 1983, a plaintiff must "(1) allege a violation of a right secured by the

---

[15] *Id.* at 555–56.
[16] *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington School Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012); *see also, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.")
[17] *Iqbal*, 556 U.S. 662, 679 (2009).
[18] *Iqbal*, 556 U.S. at 678.
[19] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).
[20] R. Doc. 1 at 6-8, paras. 19-24.

Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."[21] Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under § 1983.

Plaintiff asserts that B.O.'s constitutional rights were violated because he suffered "a violent entry and exchange without any warrant whatsoever."[22] Plaintiff clarifies, in his opposition, that the violations of B.O.'s constitutional rights occurred via **(a)** "excessive force used by the officers in the illegal entry" and **(b)** the **"wrongful seizure and disposition of the family dog."**[23]

### a) Excessive Force

Plaintiff asserts that B.O. suffers from emotional distress due to deputies' use of excessive force when bashing in the front door of the home and by firing a weapon in the direction of B.O.'s bedroom.[24] The Court's § 1983 "analysis begins by identifying the specific constitutional right[s] allegedly infringed."[25] Claims for the use of excessive force in the course of an arrest, investigatory stop, or other seizure of citizen are analyzed under the Fourth Amendment.[26] However, there is no constitutional right to be free from witnessing police action.[27] This Court has previously stated that

---

[21] *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000); *see also*, *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988).
[22] R. Doc. 1 at 6.
[23] R. Doc. 8 at 7-8.
[24] *See generally*, R. Doc. 1.
[25] *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).
[26] *See id.* at 395.
[27] *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir.1985), cert. denied 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987) ("Negligent infliction of emotional distress is a state common law tort; there is no

"[i]t is well-established that a civil rights claim must be based upon a violation of a plaintiff's personal rights."[28] Accordingly, "[a] bystander who witnesses a police action, but who is not himself an object of that action, cannot recover for any resulting emotional injuries under § 1983, although there may be such a claim under state tort law."[29]

Reasonably construing the allegations in Plaintiff's favor, the Complaint does not contain any specific facts indicating that excessive force was directed at B.O. Instead, the facts alleged indicate that B.O. was not in the room where deputies bashed in the front door, shot the dog, and arrested his father.[30] Plaintiff maintains that Deputy Parker "discharged his rifle into the home" and "one of the shots … was taken in direct line of [B.O.]'s bedroom where he was standing."[31] Notably, Plaintiff does not allege that deputies fired indiscriminately into the home or in the direction of his bedroom, but instead at the dog.[32] B.O. was not the intended target of an active arrest or investigatory stop; rather, B.O. was sleeping in his bedroom when the home

---

constitutional right to be free from witnessing [ ] police action."); *see also*, *Crane v. City of Arlington Texas*, 50 F.4th 453, 468 (5th Cir. 2022).
[28] *Thomas v. Frederick*, 766 F.Supp. 540, 557 (W.D. La. 1991).
[29] *Id.*
[30] R. Doc. 1 at 5 (also claiming that "[a] termination point was never found for one of the shots taken[,]" that "[t]he shooting unnecessarily endangered the lives of every person inside that home, including the children[,]" and reiterating that "[B.O.]'s room was in the direct line of fire").
[31] R. Doc. 1 at 5.
[32] *Harmon v. City of Arlington, Texas*, 16 F. 4th 1159, 1168 (5th Cir. 2021) (holding that when an officer stuck his arm through a passenger window and fired at the driver, firing the gun a few inches away from the passenger's face could not be fairly characterized as directed toward the passenger because the passenger was not within the purview of the officer's gunfire and the passenger did not allege that the officer fired indiscriminately into the car); *cf.*, *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986) (finding that a wife's Fourth Amendment claims were not viable because there was no evidence that any act of the deputies was directed towards her but allowing the daughter's claim to proceed because she was inside the trailer with the suspect when the police officer fired heavy buckshot into the trailer home).

became an arrest scene by virtue of circumstances beyond his control. Under these facts, B.O.'s excessive force claim fails.

### b) Wrongful Seizure of Dog

B.O.'s claims for the loss of the dog cannot overcome Defendants' qualified immunity defense. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[33] Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss."[34] Defendants are entitled to qualified immunity unless the Plaintiff has alleged facts sufficient to plausibly show that "(1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct."[35] The "clearly established law" must be "particularized to the facts of the case" and not "defined at a high level of generality."[36] A right is clearly established only if preexisting precedent "ha[s] placed the ... constitutional question beyond debate."[37] Because the plaintiff

---

[33] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
[34] S*ee e.g., Grigsby & Associates, Inc. v. City of Shreveport*, 294 F.Supp.3d 529, 541-42 (W.D. La. 2018); *see also*, *Longoria Next Friend of M.L. v. San Benito Independent Consolidated School District*, 942 F.3d 258, 263-34 (5th Cir. 2019) ("When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an 'obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'") (citations omitted).
[35] *Harmon*, 16 F. 4th at 1163 (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L.Ed.2d 565 (2009)).
[36] *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) and *Anderson v. Creighton*, 483 U.S. 635,640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987).
[37] *Ashcroft*, 563 U.S. at 741 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *see also*, *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523

must point to a case almost squarely on point, qualified immunity will protect "all but the plainly incompetent or those who knowingly violate the law."[38]

Here, Plaintiff fails to identify any clearly established law that would place beyond doubt the constitutional question in this case. The relevant question is not whether a reasonable officer would have refrained from shooting a barking dog after forcefully entering a home in response to a domestic disturbance call. Instead, the relevant question is whether every reasonable officer would have inevitably refused to do so in light of the Fourth Amendment standards established by case law. Our answer to that relevant question is in the negative. Plaintiff has not presented the Court with any materially similar case from the United States Supreme Court, this Court, or the Supreme Court of Louisiana that would have given Defendants fair warning that this particular conduct violated the Fourth Amendment. Moreover, the facts alleged here involve "accidental effects" of conduct directed toward something other than the B.O., not the kind of "misuse of power" which is the focus of a Fourth Amendment violation.[39] Cases from other circuits are generally in accord with this principle, especially when bystanders are involved.[40] The circumstances of this case,

---

(1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right").

[38] *Malley*, 475 U.S.at 341.

[39] *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 103 L.Ed.2d 628 (1989) ("the Fourth Amendment addresses 'misuse of power' … not the accidental effects of otherwise lawful government conduct.") (citation omitted).

[40] *See e.g.*, *Schultz v. Braga*, 455 F.3d 470, 479–83 (4th Cir. 2006) (declining to extend Fourth Amendment protections to "reasonably foreseeable" victim of officer's gunshot where victim was already seized by traffic stop and officer did not intend to shoot her but instead intended to shoot her passenger); *Childress v. City of Arapaho*, 210 F.3d 1154, 1155–57 (10th Cir. 2000) (holding no Fourth Amendment seizure occurred when two escapees abducted plaintiff and her two-year-old daughter and stole their minivan, and law enforcement officers shot intending to restrain the minivan and escapees but accidentally injured plaintiff and her daughter who were hostages in the minivan); *Medeiros v. O'Connell*, 150 F.3d 164, 167–69 (2d Cir. 1998) (holding no Fourth Amendment seizure and relying

forcible entry and the shooting of a pet, although regrettable, do not constitute the sort of obvious violation of the Fourth Amendment that would overcome Defendants' assertion of qualified immunity.

### 2. State Claims on Behalf of B.O.

Plaintiff alleges that Defendants' actions constituted invasion of privacy, an illegal deprivation of property, and a violation of B.O.'s rights under the Louisiana Constitution.[41] Specifically, Plaintiff contends that Defendants violated B.O.'s rights under Louisiana Constitution Article 1 § 5, which provides that "every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of property."[42] "Like the Fourth Amendment, this provision prohibits unreasonable search and seizures."[43] Louisiana federal district courts have noted that privacy principles embodied in the Fourth Amendment have been incorporated into Article I, § 5 of the Louisiana Constitution.[44]

The Louisiana Supreme Court has held that "[p]olice generally need a warrant to enter a home, but 'warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant.'"[45] It has been held that "reasonably fear[ing] for the

---

upon *Brower*, 489 U.S. at 596, 109 S. Ct. at 1381, for the proposition that the Fourth Amendment addresses misuse of power, not accidental effects of otherwise lawful conduct).

[41] R. Doc. 1 at 8, paras. 26-27; *see also*, R. Doc. 8 at 9 (clarifying that claims for aggravated assault, battery, (and, presumably, false imprisonment) alleged in the Complaint cannot be maintained on behalf of B.O. and were not intended to be read as being pleaded on behalf of B.O.).

[42] LA. CONST. ART. 1 § 5; *see*, R. Doc 1 at 4.

[43] *Todd v. City of Natchitoches, Louisiana*, 238 F.Supp.2d 793, 799 (W.D. La. 2002) (citations omitted).

[44] *Id.* at 798-799.

[45] *State v. Warren*, 949 So.2d 1215, 1224 (La. 2007) (citations omitted).

safety of someone inside the premises" is an exigent circumstance.[46] A warrantless entry based on exigent circumstances must be supported by probable cause, defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."[47]

To satisfy the pleading standard of a motion to dismiss, Plaintiff must plausibly allege that the deputies' entry was not under exigent circumstance supported by probable cause. Taking Plaintiff's allegations as true, the deputies were responding to a domestic disturbance call reporting someone inside the home had cried out for someone to "call the police."[48] Plaintiff's assertions there was no ongoing disturbance at the home when deputies arrived, and that the information given to the deputies was not credible, do not refute that the deputies did not reasonably fear for the safety of someone on the premises based on the report of Plaintiff's neighbor.[49] Therefore, the claim on behalf of B.O. for invasion of privacy is not plausible.

Moreover, B.O.'s claims relating to the deprivation of property as a result of the death of the dog are duplicative of Plaintiff's claims. "A claim may be dismissed as duplicative under Rule 12(b)(6) when it seeks identical damages as another claim asserted in the complaint."[50] "[T]wo claims are duplicative of one another 'if they arise from the same facts and do not allege distinct damages.'"[51]

---

[46] *Id.*
[47] *Id.*
[48] Doc. 1 at 4, para. 10.
[49] *Id.* at para. 11.
[50] *Yor-Wic Constr. Co. Inc. v. Eng'g Design Techs.*, No. 17-0224, 2019 WL 1412943, at *4 (W.D. La. Mar. 28, 2019) (citation omitted).
[51] *Id.*

At most, Plaintiff appears to claim that B.O., like him, was deprived of the "family dog" without due process. Plaintiff contends that damages for the loss of the family dog are not identical because they each have a separate ownership interest in the dog.[52] However, there are no facts included to suggest that B.O. has a distinct ownership interest in the dog.[53] Instead, the Complaint references this pet as "the dog" three times,[54] as the "family dog" once,[55] as Plaintiff's dog once,[56] and as B.O.'s dog only once.[57] Viewed as the family dog, Plaintiff and B.O.'s separate claims for loss of the dog are duplicative. Even if Plaintiff had sufficiently alleged that B.O. had a separate property interest in the dog, recovery for loss of the family dog is based on the same exact facts and seeks the same damages as Plaintiff's claim in his own right. Accordingly, B.O.'s claims for deprivation of property for the death of the dog are duplicative.

### 3. Claims against Sheriff Prator.

Plaintiff's claim against Sheriff Prator in his official capacity is premised on § 1983 liability. A suit against a sheriff in his official capacity for the tortious actions of his employees is a suit against the municipality.[58]

---

[52] R. Doc. 8 at 9.
[53] *C.f.*, *Sonnier v. Ackal*, No. 6:16-cv-00621, 2017 WL 3080023 at *4 (W.D. La. 6/27/17) (finding that the evidence established that a father and son both owned the same dog because the father had voluntarily relinquished temporary possession of the dog to his son when the father would travel for work).
[54] Doc. 1 at 5, para 14(e), 15; Doc. 1 at 7, para. 21.
[55] Doc. 1 at 7, para. 19.
[56] Doc. 1 at 5, para. 14(f).
[57] Doc. 1 at 8, para. 23.
[58] *Williams v. Zordan*, No. 21-1061, 2023 WL 6451111 at *8 (W.D. La. 2/29/23) (citing *Burge v. Par. of St. Tammany*, 187 F.3d 452, 469-70 (5th Cir. 1999) and *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that an official capacity suit is the equivalent of a suit against the entity of which the officer is an agent)).

To hold a municipality liable under § 1983, the plaintiff must allege "(1) an official policy (2) promulgated by a policymaker (3) was the moving force behind the violation of the constitutional right."[59] Since *Monell*,[60] the Fifth Circuit has defined "official policy" as:

(1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

(2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[61]

Thus, to sufficiently plead an official capacity claim, Plaintiff must plausibly allege, with sufficient factual content, that a custom or policy played a part in the violation of federal law.[62] The Fifth Circuit has held that "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'"[63] To plausibly plead "a practice so persistent and widespread as to

---

[59] *Hicks-Field v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)).
[60] *Monell v. Dept. of Soc. Servs of City of New York,* 436 U.S. 658 (1978).
[61] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).
[62] *Turner v. Houma Mun. Fire and Police Civ. Serv. Bd.*, 229 F.3d 478, 483 n.10 (5th Cir. 2000).
[63] *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)); *see Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.1992) ("This heightened pleading requirement applies to allegations of municipal custom or policy.")

practically have the force of law … a plaintiff must do more than describe the incident that gave rise to his injury."[64]

In the Complaint, Plaintiff asserts two theories of liability: **(a)** failure to train/supervise and **(b)** ratification.

### a) Failure to Train

To succeed on a theory of failure to train, a plaintiff must allege that: "(1) the [supervisor] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[65] To meet the stringent standard of deliberate indifference, "a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case."[66] Moreover, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[67]

Although Plaintiff asserts that Sheriff Prator "failed to do anything to retrain or curb the abusive practices of the department" and "failed to properly train and/or retrain the officers … with regard to proper home entry and the necessity of a warrant, the use of force, when such use is excessive and appropriate" these are conclusory statements devoid of any factual context.[68] Plaintiff has failed to set forth

---

[64] *Pena*, 879 F.3d at 622 (citation and internal quotations omitted).
[65] *Pena*, 879 F.3d at 623 (citing *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001).
[66] *Fuentes v. Nueces County, Texas*, 689 Fed.Appx. 775, 779 (5th Cir. 2017) (citations omitted).
[67] *York v. Welch*, No. 20-40580, 2024 WL 775179 at * 5 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[68] R. Doc. 1 at 6, para. 17 (Plaintiff also reiterates these claims as failures to investigate and supervise).

any specifics regarding said failure to train or supervise and in what context those alleged failures took place. Therefore, the Complaint is insufficient to plausibly allege a claim that will survive a Rule 12(b)(6) motion to dismiss.[69]

### b) Ratification

Plaintiff also proposes that by failing to discipline the deputies and blessing their actions, Sheriff Prator "adopt[ed] their actions as policy."[70] However, "[s]ubsequent endorsement of a deputies' actions typically does not indicate the existence of an official policy…"[71] Further, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality."[72] Instead, ratification theories of municipal liability are reserved for "extreme factual situations."[73]

The only elaboration on these claims contained in Plaintiff's pleadings is that Sheriff Prator did not discipline the deputies after the incident. The facts of this case do not constitute the kind of "extreme factual scenario" that supports a theory of ratification. Thus, Plaintiff fails to plausibly plead that Sheriff Prator adopted an official policy under a ratification theory.

---

[69] *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").
[70] R. Doc. 1 at 6, para. 16.
[71] *Walker v. Harris County*, 477 Fed. Appx. 175, 179 (5th Cir. 2012).
[72] *See Coon*, 780 F.2d at 1161 (explaining that precedent "does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy").
[73] *Cf.*, *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985) (finding ratification where officers 'poured' gunfire onto a truck and killed an innocent occupant) with *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir.1998) (refusing to find ratification in a case in which an officer shot the fleeing suspect in the back)).

A review of Plaintiff's Complaint confirms that not only has he failed to include any allegation of an unlawful custom or policy in the Sheriff's Office, he also has alleged no facts that would support an inference that the deputies acted pursuant to any unlawful policy or custom. Plaintiff merely claims that Caddo Parish Sheriff's Department personnel "have a history of violating the civil rights of citizens through improper entry, and excessive force, and the practices engaged in by the deputies have become the practice and custom of the [ ] Department." Here, there is simply no allegation, nor a reasonable inference based on sufficiently alleged facts, that Sheriff Prator promulgated an official policy that caused a constitutional violation.

Nonetheless, Plaintiff suggests that dismissal is inappropriate until such time a discovery can be conducted on these *Monell* issues. However, at the motion to dismiss stage, a plaintiff must plead "sufficient facts … to raise a reasonable expectation discovery will reveal evidence."[74] Because Plaintiff's claims lack any factual support whatsoever, the Court has no reasonable expectation that discovery will reveal evidence supporting these allegations and dismissal is appropriate.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (R. Doc. 6) is hereby **GRANTED**.

**IT IS ORDERED** that all claims by Plaintiff, Brandon M. Owen, asserted on behalf of his minor child, B.O. are hereby **DISMISSED with prejudice**.

---

[74] *Lewis v. Horton*, 665 F. Supp. 3d 801, 807 (W.D. La. 2023) (citation omitted).

**IT IS FURTHER ORDERED** that all claims by Plaintiff asserted against Sheriff Steve Prator are hereby **DISMISSED with prejudice**.

**THUS DONE AND SIGNED** this 11th day of February, 2025.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**